# SPICER a. HUNTER.

*Supreme Court, Second District; Special Term, Sept.,* 1861.

### FRAUDULENT CONVEYANCE.—PROPER PARTIES.

Where the purchaser of land at a foreclosure-sale, on receiving arrears of interest, with costs, and expenses of foreclosure, allowed the defendant to continue in possession, under a parol agreement that the defendant should occupy the land so long as he paid taxes, assessments, and interest on the mortgage debt; —*Held*, that the purchaser had at least a valid lien upon the land, which would pass by grant, and which could not be impeached by a subsequent creditor of the defendant in the foreclosure.

In an action by a creditor to avoid a conveyance, one who innocently accepted a deed of the property for the benefit of the alleged fraudulent grantee, and who has conveyed in accordance with the trust, is not a proper party.*

---

* The case of VAN WART a. PRICE (*Supreme Court, First District; Special Term, December,* 1861), was an action to recover the plaintiff's one-half share of the sum received in the year 1856, by the defendant, from the city of New York, as an award to "unknown owners" for land taken for public purposes. The complaint in this action contained the averments that one Abraham Van Wart died, seized of the land, in 1835, leaving as sole heirs-at-law two sons, Charles E. Van Wart

Demurrer to the complaint by the defendant, Jacob Hunter.

The complaint alleged, that December 4, 1843, the plaintiff recovered a judgment in the Supreme Court against John Sniffen, deceased, for $7,301.25 ; upon which there was owing to

---

and the plaintiff ;—*Held*, on demurrer, that there was no defect of parties plaintiff in not joining Charles E. Van Wart, or the persons seized, at the time of the award, of the undivided half which plaintiff did not claim.

Demurrer to the complaint.

This action was brought by one of the heirs of Abraham Van Wart, to recover his share, one half of the sum of $5,139.27, received by the defendant from the city of New York, in the year 1856, being an award to "unknown owners," for four lots of land taken for the Central Park, of which four lots the complaint alleged that Abraham Van Wart, in the year 1835, died seized.

The complaint also alleged that, on the death of Abraham Van Wart, the four lots descended to his sons Charles E. Van Wart and the plaintiff. The defendant demurred to the complaint, on the ground of a defect of parties plaintiff, in not joining Charles E. Van Wart or the person who, at the time of the award, was the owner of the undivided half of the lots not claimed by plaintiff.

*Maurice Leyne* and *Charles A. Rapallo*, in support of the demurrer.—I. In all actions relating to personal estate, whether *ex contractu* or *ex delicto*, tenants in common must join. Before the Code, the objection of non-joinder in actions *ex delicto*, could only be taken advantage of by plea in abatement; but in actions *ex contractu*, a demurrer was proper when the objection appeared on the face of the declaration. (See 5 *Hill*, 59, *note*.) But under the Code, the objection, when appearing on the face of the complaint, must in all cases be taken advantage of by demurrer. (Zabriskie *a.* Smith, 13 *N. Y.*, 322, 336.)

II. In this State, tenants in common must also join in all personal actions relating to the real estate held in common. It is only in real actions, such as ejectment, &c., that tenants in common can sever. (Decker *a.* Livingston, 15 *Johns.*, 479 ; Putnam *a.* Wise, 1 *Hill*, 234 ; Rich *a.* Penfield, 1 *Wend.*, 380 ; 8 *Cow.*, 304 ; 8 *Johns.*, 151 ; 6 *Ib.*, 108 ; 13 *Ib.*, 286 ; 14 *Ib.*, 426.)

III. Under the English law of primogeniture, there was no such tenancy in common as exists here among heirs, and the rule was different as to their joinder in actions. There, tenants in common always severed in an avowry for rent, &c. But coparceners joined in an avowry for rent, and in personal actions relating to their estate. Under the law of this State, such heirs, taking as tenants in common, are the same as coparceners under the English law, and the same rules are applicable to actions brought by them.

IV. A verdict and judgment in this action would not conclude the other heirs from claiming that the interest of the plaintiff was less than that claimed by him, and the defendant might be compelled to pay twice. The interests can only be apportioned, so as to bind all parties by joining them all in the action.

V. To sustain the demurrer on the ground of non-joinder of a plaintiff, it is not necessary that it should appear on the face of the complaint, whether the party omitted is still living or not. (Burgess *a.* Abbott, 1 *Hill*, 476.)

VI. This case is analogous to that of Hill *a.* Gibbs (5 *Hill*, 56), where the prin-

plaintiff $1,017.27, with interest; and that he filed a transcript thereof in Kings county. That August 20, 1845, execution was issued thereon to the sheriff of the city and county of New York and returned unsatisfied, except as to $148.67, which sum was collected. That John Sniffen died January 13, 1853, and

ciples above stated are recognized, and the authorities referred to. The case of Sherman a. Ballou (8 *Cow.*, 304–811), is also in point.

*John Townshend*, in opposition.—I. It does not appear on the face of the complaint that there is any person other than the plaintiff and defendant who has any interest in the subject of the action. There is no presumption as against plaintiff, that Charles E. Van Wart continued to own his one undivided half. The defendant having taken the proceeds of the lots, the presumption would be that he had in the interim acquired Charles E. Van Wart's share. The allegation that the defendant falsely pretended he was owner at the time of the award, does not preclude the construction claimed by plaintiff, because defendant might not have been owner at the time of the award, but acquired the right of Charles E. Van Wart afterwards, and because owner means sole owner, and he was not sole owner.

II. The demurrer is a "speaking demurrer;" it asks in effect to have an additional fact incorporated in the complaint,—namely, that an undivided half was in Charles E. Van Wart, or those claiming through him; this was never admissible at law or in equity, and is not now. (*Coe a.* Beckwith, 31 *Barb.*, 339.)

III. If the defendant had, or is assumed to have had, any interest in the fund, he is co-tenant with plaintiff, and then properly sued. (1 *Rev. Stat.*, 750, § 9; Cochran a. Carrington, 25 *Wend.*, 409.)

IV. The action is for money received to the use of plaintiff, no other action could be brought. No wrong, *i. e.*, tort, is done plaintiff; but he has the right, by common law and by statute, to say the money was for his use. If defendant wrongfully took the money, he wronged the city or the court. Plaintiff had his election to demand the money of the defendant or of the court. The statute (2 *Rev. L.*, 418, § 184) does not take away this right. (*Sedw. Stat.*, 1 ed., 402, 93.)

V. If the defendant had possessed himself of the land which the award represented, the plaintiff might have sued for his part alone. (Kellogg a. Kellogg, 6 *Barb.*, 116.)

VI. And for the proceeds of the real estate each tenant in common may sue alone.—1. As for the rent. (Jones a. Felsa, 3 *Bosw.*, 63.) 2. Double rent. (Doe a. Hazell, *Esp. N. P. Cas.*, 107; Wilkinson a. Hull, 1 *Bing. N. C.*, 713.) 3. Mesne profits. 4. So in a distress and avowry for rent they could not join. (Decker a. Livingston, 15 *Johns.*, 479; Willis a. Fletcher, *Cro. Eliz.*, 330.) 5. For trespass in carrying away timber. (Longfellow a. Quimby, 29 *Maine*, 186.)

VII. The award severed the tenancy; the money was paid in for each one entitled, according to his share and interest, and each might have applied alone for his share. (Walsh a. Adams, 3 *Den.*, 125; White a. Morton, 22 *Verm.*, 15.)

VIII. If there can be any tenancy in common of a sum of money, the tenancy is severed by one demanding his part. (Tripp a. Riley, 15 *Barb.*, 333; *Brooms' Maxims*, "*Lex spectat naturæ ordinem.*")

IX. The general rule is, that tenants in common must sue alone. The only

letters of administration were granted to his widow on January 17, 1853, by the surrogate of Kings county. That on and prior to April, 1836, Sniffen was owner in fee of certain tracts of land in Front-street, Brooklyn, which were incumbered, in portions, by four mortgages, to secure in all the sum of $4,970. That in April, 1836, Richard Hunter (who had become the owner of two of the mortgages, to the amount of $3,270), on the application of Sniffen, agreed to foreclose them, and upon a sale to purchase and hold the premises, and permit Sniffen to retain possession and receive the rents, upon condition that thereafter Sniffen would pay the interest on the amount secured by the mortgages, and all taxes and assessments, and keep the premises free from all incumbrances. That thereupon, on February 2, 1837, under foreclosure proceedings instituted by Richard Hunter, the premises were sold at public auction to him, he being the highest bidder; and Frederick De Peyster, the master in chancery, appointed in the proceedings, gave a deed of the premises to the defendant Jacob Hunter, for the benefit of Richard Hunter.

That Sniffen during his life continued in possession of the premises, claiming to be the owner, and received the rents and profits of the lands, with the knowledge and consent of Richard Hunter, and paid the costs of foreclosure and the interest on the mortgages to February 14, 1849, and from that period the sum of $400, on account of further interest on the mortgages to the time of his death. He also paid interest on plaintiff's judgment to November 1, 1852, and the taxes and assessments until 1846, but he afterwards, contrary to his agreement, suffered the premises to be sold for taxes and assessments to the aggregate amount of $228.66; and upon the sales, Charles W. Lynde became the purchaser and received four certificates, for

cases where they may join is where, "*naturæ ordinem,*" there cannot be a severance of the cause of action and damages. A person entitled to a half, a fourth, or other ascertained part of a fund, may always sue for his part without joining the parties entitled to the other parts. (Hughson *a.* Cookson, 8 *L. J., N. S., Ex.,* 68 ; Perry *a.* Knott, 5 *Beav.,* 293 ; Watson *a.* Young, 2 *Eng. L. & Eq.,* 96 ; Hares *a.* Stringer, 15 *Ib.,* 145 ; Smith *a.* Snow, 3 *Mad.,* 10 : Hutchinson *a.* Townsend, 11 *N. Y.,* 675 ; Whorwood *a.* Shaw, *Yelv.,* 23.)

W. F. ALLEN, J., rendered judgment for the plaintiff, overruling the demurrer, with leave to answer on payment of costs.

the aggregate term of 1,927 years, which certificates Lynde, in July, 1853, assigned to Addison Vail, who received the leases, and in September, 1856, assigned them to John Sniffen, Jr., his brother-in-law.

That on July 31, 1855, the accounts of the administratrix of John Sniffen's estate were finally settled ; and on the accounting, among other things, she was credited with $189, paid to plaintiff for interest on her judgment since Sniffen's death to August 1, 1853, and she was ordered to pay $276.21 to plaintiff, being the balance then in her hands.

That previous to this accounting, Richard Hunter, on application of the administratrix, furnished to her a written statement of Sniffen's indebtedness, in which he claimed Sniffen's estate was indebted to him in the sum of $4,013.92, for principal and interest on the mortgages to February 14, 1853, less $400, received for interest, on account; and the statement was served on Richard Hunter, and adopted on the final accounting.

That on June 16, 1854, the defendant Jacob Hunter conveyed the premises to Richard Hunter; and the master's deed to Jacob, and his deed to Richard, were then both simultaneously recorded.

That in October, 1856, Richard Hunter commenced an action against Addison Vail and the widow and heirs of John Sniffen, to set aside the decree of foreclosure and sale to Jacob Hunter for Richard Hunter, and to declare the master's deed to Jacob Hunter, and his deed to Richard Hunter, liens by way of mortgage for the amount due on the mortgages assigned to Richard Hunter, and for a sale of the premises to satisfy his debt, or to obtain possession of the premises under the conveyance to him, and the payment to him of the rents, in the mean time, from the parties having the possession, and to set aside the certificates of sales to Lynde, as irregular and void.

That in March, 1857, the allegations in the complaint being denied, a judgment by consent of parties was entered, directing the defendants to execute and deliver to Richard Hunter a release of the premises from all claim they might have, and directing John Sniffen, Jr., to assign the corporation leases to Richard Hunter, and that he be let into the possession of the premises.

That in September, 1856, the widow of John Sniffen died intestate, and no one had since administered on his estate.

That Richard Hunter died January 8, 1859, having by will bequeathed the income of the premises to his wife, and all his real and personal estate to George H. and J. B. Hunter, his sons, subject to her life-estate.

The plaintiff thereupon alleged that the agreement between Richard Hunter and John Sniffen, whereby Hunter was to foreclose the mortgages for Sniffen's benefit, and the master's deed to defendant Jacob Hunter, and Jacob's deed to Richard Hunter, were fraudulent and void as against, and made with intent to hinder and delay, Sniffen's creditors, and prayed that the decree of foreclosure, and the master's deed to Jacob Hunter, and his deed to Richard Hunter, and all proceedings in the suit be set aside as fraudulent, and the premises be declared subject to the plaintiff's judgment against Sniffen, and be sold, and out of the proceeds of sale the plaintiff be paid her judgment, with interest and costs.

The grounds of demurrer assigned by Jacob Hunter were as follows:—*First.* That the said complaint does not state facts sufficient to constitute a cause of action. *Second.* That the complaint does not state facts sufficient to constitute a cause of action against the defendant Jacob Hunter.

*Mathews & Swan,* in support of the demurrer (after discussing other points).—I. The transaction was not fraudulent or void as respects the plaintiff. 1. Unless the transaction was fraudulent *per se*, it is not void against the plaintiff as a subsequent creditor. (Reade *a.* Livingston, 3 *Johns. Ch.*, 481; Every *a.* Edgerton, 7 *Wend.*, 259; Jackson *a.* Brownell, 3 *Cai.*, 222.) 2. Sniffen had no creditors in 1837, and was not insolvent. Therefore, the title of Hunter was not void as against the plaintiff. (Tripp *a.* Vincent, 3 *Barb. Ch.*, 613.)

II. The transaction was not fraudulent as respects existing or subsequent creditors. 1. The arrangement to allow Sniffen to occupy the premises, and pay, as an equivalent for rent, the interest, &c., were, as respects duration, a mere charity, which Sniffen could not enforce, and which Hunter might at any time terminate. Sniffen was a mere tenant at will, or from year to year, as respects third persons. (Hunt *a.* Comstock, 15 *Wend.*, 665.) 2. The agreement being by parol, was not binding upon Hunter, and also was overridden by the master's deed. (Hall

*a.* Shultz, 4 *Johns.*, 240; Sherrill *a.* Crosby, 14 *Ib.*, 358; Bander *a.* Snyder, 5 *Barb.*, 63, 71.) There was no agreement to convey to Sniffen, giving him a possible title to retain possession. 3. The agreement between the parties could not prevail (against the terms of the master's deed) to make Hunter a mortgagee as respects third parties. (Lathrop *a.* Hoyt, 7 *Barb.*, 59; Ryan *a.* Dox, 25 *Ib.*, 440.)

III. Sniffen having violated the agreement by non-payment, &c., Hunter had a right to revoke it, and insist upon the legal title, as he did. Sniffen and his estate were benefited by his non-payment of any equivalent for the rent of the premises for several years. The creditors of Sniffen cannot complain of this.

IV. Jacob Hunter is not a proper party to this action. (*Story's Eq. Pl.*, §§ 549, 569.) By the plaintiff's own showing, he has no right, title, or interest in the estate in any manner whatever. (Muir *a.* Leake & Watts Orphan House, 3 *Barb. Ch.*, 477; Jessup *a.* Hulse, 29 *Barb.*, 539.)

V. The plaintiff could not have any relief in this action. A creditor's bill cannot be sustained to reach the equitable interest of a judgment-debtor in lands, where the debtor is deceased. The creditor must apply to the surrogate to compel the administratrix to sell. (Wilber *a.* Collier, 3 *Barb. Ch.*, 427.)

*Horton H. Burlock*, opposed.—I. The agreement made between Richard Hunter and Sniffen, and all the proceedings in the foreclosure-suit, including the master's deed to Jacob Hunter, and the deed from him to Richard Hunter, were and are fraudulent and void as to the creditors of Sniffen.

II. The receipt of the costs in the foreclosure-suit by Richard Hunter, and the interest due on the mortgages sought to be foreclosed in that suit, and the subsequent acts of Richard, in receiving interest on those mortgages, were a waiver of the decree of foreclosure, and estop Richard, or his heirs or devisees, from claiming title through the foreclosure and under the deed from Jacob.

III. The defendant Jacob was a party to the fraud against the creditors of Sniffen, by taking the deed from the master, and, after Sniffen's death, conveying the premises to Richard.

BROWN, J.—The transaction between John Sniffen, deceased,

the judgment-debtor of the plaintiff, and Richard Hunter, deceased, and the subsequent proceedings to foreclose the mortgage, and the sale and master's deed to the defendant Jacob Hunter, were not, in my opinion, fraudulent and void as to the creditors of John Sniffen. Taken in connection with the subsequent conduct of the two Hunters and John Sniffen, they converted the master's deed, and the claim under it, into a mortgage, and nothing more. Upon the plaintiff's own showing, the deed, which was executed to Jacob Hunter for the benefit of Richard Hunter, was a valid lien upon the premises therein granted, to the extent of the purchase-money, with the interest. This lien Jacob Hunter, or any other holder, might sell and assign over without fraud, or the imputation of a design to commit a fraud, upon Sniffen's creditors.

The master in chancery, Frederick De Peyster, sold and conveyed the premises to Jacob Hunter for the sum of $3,150, by deed bearing date April 25, 1837. This was long before the time that the plaintiff became Sniffen's creditor, which was not until December 4, 1843. John Sniffen, it seems, paid the costs of the foreclosure and the interest, leaving unpaid thereon the sum of $3,270, the principal sum which the mortgages were made to secure the payment of.

It is also alleged in the bill of complaint, that on the 16th day of June, 1854, the defendant Jacob Hunter executed and delivered a deed of conveyance of that date to Richard Hunter, of all his interest in the premises mentioned in the deed to him from De Peyster. I see no interest that Jacob Hunter has in this action; he has done no wrongful act, nor has his conduct interfered with or prejudiced the plaintiff's rights in any way. He has no claim for any relief against him. Without expressing any opinion upon the merits of the other defences urged by Jacob Hunter's counsel on the argument, I am of opinion, for the reasons given, he is entitled to judgment upon the demurrer, with leave to the plaintiff to amend, upon payment of costs.